## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| JOHN LEADFORD, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TALLGRASS ENERGY PARTNERS, LP, DAVID G. DEHAEMERS JR., WILLIAM R. MOLER, JEFFREY R. ARMSTRONG, JEFFREY A. BALL, ROY N. COOK, FRANK J. LOVERRO, STANLEY DE J. OSBORNE, JOHN T. RAYMOND, AND TERRENCE D. TOWNER, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**Case No. _____**

**COMPLAINT – CLASS ACTION FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Plaintiff John Leadford ("Plaintiff"), by and through his undersigned counsel, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and on behalf of all other similarly situated public common unitholders of Tallgrass Energy Partners, LP ("TEP" or the "Company") against the Company, David G. Dehaemers Jr., William R. Moler, Jeffrey R. Armstrong, Jeffrey A. Ball, Roy N. Cook, Frank J. Loverro, Stanley de J. Osborne, John T. Raymond, and Terrence D. Towner, the members of the board of directors (collectively referred

to as the "Board" or the "Individual Defendants") of Tallgrass MLP GP, LLC[1] ("TEP GP"), for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S,C. §§78n(a) and 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation M-A, 17 C.F.R. § 229.1015(b)(4), in connection with the acquisition of TEP by Tallgrass Energy GP, LP ("TEGP") through a transaction as alleged in detail herein ("Proposed Transaction").

2.      On March 27, 2018, TEP and TEGP issued a joint press release announcing that they had entered into a definitive Agreement and Plan of Merger ("Merger Agreement") by an among TEP, TEGP, Tallgrass Equity, LLC, a Delaware limited liability company ("Tallgrass Equity"), Razor Merger Sub, LLC, a Delaware limited liability company and wholly owned subsidiary of TEP ("Merger Sub"), and TEP GP, a Delaware limited liability company.  Pursuant to the Merger Agreement, each issued and outstanding common unit representing a limited partner interest of TEP, except for any TEP Common Units owned by Tallgrass Equity, will be converted into the right to receive 2.0 Class A shares representing limited partner interests in TEGP (the "Merger Consideration").

3.      As discussed below, the Merger Consideration appears inadequate, and the process by which Defendants agreed to consummate the Proposed Transaction is fundamentally unfair to Plaintiff and TEP's other public common unitholders.

4.      On March 30, 2018, in order to convince TEP's public common unitholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete

---

[1]    Tallgrass MLP GP, LLC ("TEP GP") is the general partner of TEP.  TEP is controlled by TEP GP, who exercises its authority through the TEP GP board of directors.

and misleading Registration Statement on a Form S-4 (the "Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.        In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) financial projections for TEP; (ii) the valuation analyses conducted by the Company's financial advisor, Evercore Group L.L.C. ("Evercore"); (iii) the background process leading up to the Proposed Transaction; and (iv) the potential conflicts of interest Evercore faced as a result of its historical dealings with either party.

6.        The special meeting of TEP's public common unitholders to vote on the Proposed Transaction is forthcoming.  It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's unitholders prior to the forthcoming unitholder vote so that they can properly exercise their corporate suffrage rights.

7.        For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the unitholders vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TEP's public common unitholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## PARTIES

8.        Plaintiff is, and has been at all relevant times, a unitholder of TEP common units.

9.        Defendant TEP is a Delaware limited partnership, with its principal executive offices at 4200 W. 115th Street, Suite 350, Leawood, Kansas 66211. The Company's common stock trades on the NYSE under the ticker symbol "TEP".

10.    Defendant David G. Dehaemers Jr. ("Dehaemers") is, and has been at all relevant times, a director of TEP GP and has served as President and Chief Executive Officer of TEP GP since February 2013.

11.    Defendant William R. Moler is, and has been at all relevant times, a director of TEP GP.

12.    Defendant Jeffrey R. Armstrong is, and has been at all relevant times, a director of TEP GP.

13.    Defendant Jeffrey A. Ball is, and has been at all relevant times, a director of TEP GP.

14.    Defendant Roy N. Cook is, and has been at all relevant times, a director of TEP GP.

15.    Defendant Frank J. Loverro is, and has been at all relevant times, a director of TEP GP.

16.    Defendant Stanley de J. Osborne is, and has been at all relevant times, a director of TEP GP.

17.    Defendant John T. Raymond is, and has been at all relevant times, a director of TEP GP.

18.    Defendant Terrence D. Towner is, and has been at all relevant times, a director of TEP GP.

19.    The parties in paragraphs 10 through 18 are referred to herein as the "Individual Defendants" and/or the "Board," collectively with TEP the "Defendants."

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

21.    This Court has jurisdiction over the Defendants because each Defendant is either a limited partnership that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

22.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; and (ii) TEP is a limited liability partnership formed under the laws of this District.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public common unitholders of TEP (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24.    This action is properly maintainable as a class action because:

    a)  the Class is so numerous that joinder of all members is impracticable.  As of February 13, 2018, there were approximately 73.20 million common units of TEP outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public unitholders of TEP will be ascertained through discovery;

b) there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

    i.    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Registration Statement in violation of Section 14(a) of the Exchange Act;

    ii.    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    iii.    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their units regarding the Proposed Transaction based on the materially incomplete and misleading Registration Statement.

c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

    f)   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

    g)   a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## <u>SUBSTANTIVE ALLEGATIONS</u>

**I.**    **Background of the Company and the Proposed Transaction**

25.    TEP is a publicly traded, growth-oriented limited partnership that owns, operates, acquires, and develops midstream energy assets in North America. The Company's operations are located in and provide services to certain key United States hydrocarbon basins, including the Denver-Julesburg, Powder River, Wind River, Permian, and Hugoton-Anadarko Basins and the Niobrara, Mississippi Lime, Eagle Ford, Bakken, Marcellus, and Utica shale formations.

26.    TEP's primary assets include natural gas transportation, storage, gathering, and processing assets, crude oil transportation, storage, and terminalling assets, and water business services assets. The Company's business segments are: (1) natural gas transportation; (2) crude oil transportation; and (3) gathering, processing, and terminalling.

27.    On March 27, 2018, TEP and TEGP issued a joint press release announcing the Proposed Transaction. The press released, stated in relevant part:

**Tallgrass Energy Announces Agreement for Tallgrass Energy GP to Acquire Tallgrass Energy Partners; Announces Increased Quarterly Distributions at TEGP and TEP**

- TEP public unitholders will receive 2.0 TEGP Class A shares for each outstanding TEP common unit; the exchange ratio represents an approximate 10 percent premium to the 30-trading day volume weighted average exchange ratio prior to the company's Feb. 7 acquisitions and restructuring announcements

- Proposed transaction will result in <u>no distribution cut to TEP unitholders</u>, and will be accretive to TEGP shareholders and TEP unitholders

- TEGP Class A share first quarter 2018 dividend increased to $0.4875, or $1.95 annualized

- TEP common unit first quarter 2018 distribution increased to $0.975, or $3.90 annualized

- Upon closing the proposed transaction, TEGP will change its name to Tallgrass Energy, LP ("Tallgrass Energy") and will trade on the New York Stock Exchange under the ticker symbol "TGE"

- Tallgrass Energy continues to expect Adjusted EBITDA[1] of between $755 - $835 million for 2018 and expects dividend coverage for Tallgrass Energy in excess of 1.20x for 2018; dividend growth for existing TEGP shareholders expected to be between 38 – 42 percent for 2018

- Upon closing, Tallgrass Energy does not expect to pay cash federal income taxes for a period currently estimated to be at least 10 years

LEAWOOD, Kan.—(BUSINESS WIRE)—Tallgrass Energy GP, LP (NYSE: TEGP) and Tallgrass Energy Partners, LP (NYSE: TEP) today announced the execution of a definitive agreement pursuant to which TEGP will acquire the approximately 47.6 million TEP common units held by the public in a taxable stock-for-unit merger transaction at a ratio of 2.0 TEGP Class A shares for each outstanding TEP common unit.

"We are executing this transaction from a position of fundamental business strength, and the result is a win for the TEP unitholders and TEGP shareholders alike. This non-dilutive combination differentiates our transaction from most other recent combinations in the MLP universe," said President and CEO David G. Dehaemers Jr.

"Eliminating TEP's incentive distribution rights will immediately improve our cost of capital and will enhance our ability to compete for, and the returns generated by, acquisitions and organic growth projects," Dehaemers added. "In addition, our single public entity will be more streamlined, simplified and closely align all of our equity holders' future financial incentives. We expect the combined company, which will be taxed as a corporation, will appeal to an even wider set of potential investors. We are looking forward to closing this transaction and focusing on the next chapter of value creation at Tallgrass Energy."

The merger agreement has been unanimously approved by the Board of Directors of TEGP's general partner, the Conflicts Committee of the Board of Directors of TEP's general partner (the "TEP Conflicts Committee") and the Board of Directors

of TEP's general partner. Subject to customary approvals and conditions, the merger is expected to close by the end of the second quarter of 2018.

[1]     Adjusted EBITDA is a non-GAAP financial measure. For additional information, please read "Non-GAAP Measures."

**Transaction Details**

Under the terms of the merger agreement, TEGP will acquire the approximately 47.6 million TEP common units held by the public at a fixed exchange ratio of 2.0 TEGP Class A shares for each outstanding common unit. As a result of the proposed transaction, the TEP incentive distribution rights will be cancelled, the TEP common units will no longer be publicly traded and 100 percent of the equity interests of TEP will be owned by TEGP's subsidiary, Tallgrass Equity, LLC ("Tallgrass Equity").

In the proposed transaction, TEGP will issue an aggregate of approximately 95.2 million Class A shares to former TEP common unitholders, representing approximately 62.1 percent of the outstanding Class A shares of TEGP following the transaction. The revolving credit facilities of TEP and Tallgrass Equity, and the senior notes of TEP are expected to remain outstanding following the merger. Assuming the merger closes on or before the record date for the second quarter 2018 dividend, former TEP unitholders holding TEGP Class A shares on the record date would be entitled to receive the second quarter 2018 dividend on the TEGP Class A shares they receive in the merger in accordance with TEGP's agreement of limited partnership.

Completion of the merger is subject to customary closing conditions, including the approval by holders of a majority of the outstanding TEP common units, including common units owned by Tallgrass Equity, and the expiration or termination of all waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act. As part of the transaction, TEGP and certain of its subsidiaries entered into a support agreement agreeing to vote their approximately 25.6 million TEP common units (representing approximately 35 percent of the total outstanding TEP common units) in favor of the merger.

An investor presentation related to the transaction will be posted on the Tallgrass Energy website. TEP unitholders, TEGP shareholders and other interested parties are invited to view those materials under the investor relations sections at www.tallgrassenergy.com.

**Distributions**

**TEGP**

The board of directors of TEGP's general partner has declared a quarterly cash dividend of $0.4875 per Class A share for the first quarter of 2018, or $1.95 on an annualized basis. This represents a 32.7 percent sequential increase from the fourth quarter 2017 dividend of $0.3675 per Class A share and an increase of 69.6 percent from the first quarter 2017 dividend of $0.2875 per Class A share. It is TEGP's 11th consecutive increase since its May 2015 initial public offering.

**TEP**

The board of directors of TEP's general partner declared a quarterly cash distribution of $0.975 per common unit for the first quarter of 2018, or $3.90 on an annualized basis. This represents a sequential increase of 1.0 percent from the fourth quarter 2017 distribution of $0.965 per common unit and an increase of 16.8 percent from the first quarter 2017 distribution of $0.835 per common unit. It is TEP's 19th consecutive increase since its May 2013 initial public offering.

The TEGP and TEP quarterly distributions for the first quarter of 2018 will be paid on Tuesday, May 15, 2018, to shareholders and unitholders of record as of the close of business on Monday, April 30, 2018.

**Advisors**

Barclays acted as advisor to TEGP and Evercore Partners acted as advisor to the TEP Conflicts Committee. Baker Botts L.L.P. served as legal counsel to TEGP and Bracewell LLP served as legal counsel to the TEP Conflicts Committee.

**About Tallgrass Energy**

Tallgrass Energy is a family of companies that includes publicly traded partnerships Tallgrass Energy Partners, LP (NYSE: TEP) and Tallgrass Energy GP, LP (NYSE: TEGP). Operating across 11 states, Tallgrass is a growth-oriented midstream energy operator with transportation, storage, terminal, water, gathering and processing assets that serve some of the nation's most prolific crude oil and natural gas basins.

To learn more, please visit our website at www.tallgrassenergy.com.[2]

28.     The Merger Consideration the TEP common unitholders stands to receive if the

Proposed Transaction is consummated is unfair and inadequate because, among other things, the

---

[2]     Tallgrass Energy GP, LP, Current Report (Form 8-K), at Exhibit 99.1 (Joint press release issued by Tallgrass Energy Partners, LP and Tallgrass Energy GP, LP, dated March  26, 2018 (Furnished solely for purposes of Item 7.01 of this Form 8-K)) (March 27, 2018).

intrinsic value of the TEP as a standalone entity is materially in excess of the amount offered given the Company's prospects for future growth and earnings.

29.     It is imperative that Defendants disclose the material information they have omitted from the Registration Statement, discussed in detail below, so that the Company's unitholders can properly exercise their corporate suffrage rights and make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

## II.     The Registration Statement is Materially Incomplete and Misleading

30.     On March 30, 2018, the Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to TEP unitholders.  The Registration Statement solicits the Company's unitholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents or omits material information that is necessary for the Company's unitholders to make an informed voting decision in connection with the Proposed Transaction.

### *Material Omissions Concerning TEP's Financial Projections*

31.     First, the Registration Statement provides several non-GAAP financial metrics for TEP, including Adjusted EBITDA and Distributable Cash Flow, but fails to disclose the line-item projections for the specific metrics, adjustments, and/or inputs that are used to calculate these Non-GAAP financial measures or provide a reconciliation of the Non-GAAP measures to their most directly comparable GAAP financial measure, such as Net Income.  *See* Registration Statement 62.

32.     For example, the Registration Statement defines Adjusted EBITDA as "net income excluding the impact of interest, income taxes, depreciation and amortization, non-cash income or loss related to derivative instruments, non-cash long-term compensation expense, impairment losses, gains or losses on asset or business disposals or acquisitions, gains or losses on the repurchase, redemption or early retirement of debt, and earnings from unconsolidated investments, but including the impact of distributions from unconsolidated investments," but fails to disclose TEP's projected: (i) net income; (ii) interest; (iii) income taxes; (iv) depreciation and amortization; (v) non-cash income or loss related to derivative instruments; (vi) non-cash long-term compensation expense; (vii) impairment losses, gains or losses on asset or business disposals or acquisitions; (viii) gains or losses on the repurchase, redemption or early retirement of debt; (ix) earnings from unconsolidated investments; and (x) distributions from unconsolidated investments. *See* Registration Statement at 62.

33.     Likewise, the Registration Statement defines Distributable Cash Flow as "Adjusted EBITDA, plus deficiency payments received from or utilized by our customers, less cash interest costs, maintenance capital expenditures, distributions to noncontrolling interests in excess of earnings allocated to noncontrolling interests, and certain cash reserves permitted by TEP's partnership agreement," but fails to disclose: (i) the inputs and line items that compose Adjusted EBITDA; (ii) deficiency payments received from or utilized by our customers; (iii) cash interest costs; (iv) maintenance capital expenditures; (v) distributions to noncontrolling interests in excess of earnings allocated to noncontrolling interests; and (vi) certain cash reserves permitted by TEP's partnership agreement.  *See* Registration Statement at 62.

34.     Furthermore, the Registration Statement fails to disclose the "projected future cash distributions to TEP Unitholders based on the TEP financial projections," despite the fact that

projections of TEP's future cash distributions were provided to Evercore and relied upon when conducting their valuation analyses in support of their fairness opinion. *See* Registration Statement at 51.

35.     Omission of the above-referenced projections renders the Registration Statement materially incomplete and misleading. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

36.     Furthermore, complete disclosure of the above-mentioned information omitted from the financial projections is particularly important for TEP unitholders in light of the fact that unitholders are being asked to vote their shares of the Proposed Transaction, which has been unanimously endorsed by the Board, that, if consummated, may cause unitholders to receive a materially different, if at all, distribution as TEGP unitholders, thereby denying them their right to fully share equitably in the true value of TEP.

### *Material Omissions Concerning Evercore's Financial Analysis*

37.     With respect to Evercore's *Discounted Distribution Analysis* of TEP, the Registration Statement fails to disclose the projected future cash distributions, which were based on the TEP financial projections. *See* Registration Statement at 51.

38.     This key input is material to TEP's common unitholders, and its omission renders the summary of Evercore's *Discounted Distribution Analysis* of TEP incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness

opinions, "there is [] an element of subjectivity present in the choice and application of these [valuation] methods" and that the banker's key choices can have a substantial "effect the outcome of a valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1573-74 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* With respect to a discounted cash flow analysis, Professor Davidoff explains:

> **There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars**…. This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. **This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

39.     Similar to a discounted cash flow analysis[3], where the value of a business is based on its projected future free cash and then discounted to their present value estimate, Evercore's *Discounted Distribution Analysis* evaluated the present value of TEP's projected future cash distributions. However, just as withholding a company's unlevered free cash flows in a discounted cash flow analysis constitutes a material omission, the Registration Statement failed to disclose

---

[3]     *See* Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. at 1574 n.73 (collecting sources and outlining the methodology for conducting a DCF analysis in three steps: (1) an estimate is made of the future free cash flows of the corporation over a set period of time; (2) a value of the corporation's free cash flows in perpetuity after this discrete period is forecasted; this second value is known as a terminal value and it is typically calculated by applying a perpetual growth rate to the estimated cash flow in the first year of this period; and (3) the cash flows derived in the first two steps are discounted back at an appropriate discount rate to arrive at a present value of all of the future cash flows of the corporation).

the "projected future cash distributions to TEP Unitholders based on the TEP financial projections." Registration Statement at 51.

40.     With respect to Evercore's *Peer Group Trading Analysis* for TEP, the Registration Statement fails to disclose the individual multiples Evercore utilized for each of the companies included in the analyses. *See* Registration Statement at 51-52. A fair summary of the *Peer Group Trading Analysis* requires the disclosure of the individual multiples for each company utilized; providing the high, mean, and low multiples that a banker applied to render TEP's Enterprise Value to 2018, 2019, and 2010 EBITDA is insufficient, as unitholders are unable to assess whether the banker applied the appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied valuation of the Company. Accordingly, the omission of the individual multiples renders the summary of these analyses set forth on pages 51 through 52 of the Registration Statement materially incomplete and misleading. In addition, the Registration Statement also fails to disclose adjustments made to Evercore's *Peer Group Trading Analysis* for TEP, specifically: (i) net debt; and (ii) proportional Rockies Express net debt and noncontrolling interest as of December 31, 2017.

41.     Similarly, with respect to Evercore's *Precedent M&A Transactions Analysis* for TEP, the Registration Statement fails to disclose the individual multiples Evercore utilized for each of the transactions included in the analyses. *See* Registration Statement 52-55. For the same reasons discussed above, the omission of why the individual multiples renders the summary of the analysis and the implied enterprise value range misleading. In addition, the Registration Statement also fails to disclose adjustments made to Evercore's *Precedent M&A Transactions Analysis* for TEP, specifically: (i) net debt; and (ii) proportional Rockies Express net debt and noncontrolling interest as of December 31, 2017.

42.     Likewise, with respect to Evercore's *Premiums Paid Analysis* for TEP, the Registration Statement fails to disclose the individual premiums Evercore utilized for each of the transactions included in the analyses.  *See* Registration Statement 56-57.  For the same reasons discussed above, the omission of why the individual premiums renders the summary of the analysis and the implied enterprise value range misleading.

43.     With respect to Evercore's *Peer Group Trading Analysis* for TEP GP, the Registration Statement fails to disclose the individual multiples Evercore utilized for each of the companies included in the analyses.  *See* Registration Statement 57-58.  For the same reasons discussed above, the omission of why the individual premiums renders the summary of the analysis and the implied enterprise value range misleading.  In addition, the Registration Statement also fails to disclose adjustments made to Evercore's *Peer Group Trading Analysis* for TEP GP, specifically: (i) net debt outstanding as of December 31, 2017; and (ii) the implied value of a 25.01% interest in REX Holdings.

44.     With respect to Evercore's *Precedent M&A Transactions Analysis* for TEP GP, the Registration Statement fails to disclose the individual multiples Evercore utilized for each of the transactions included in the analyses.  *See* Registration Statement 58.  For the same reasons discussed above, the omission of why the individual premiums renders the summary of the analysis and the implied enterprise value range misleading.  In addition, the Registration Statement also fails to disclose adjustments made to Evercore's *Precedent M&A Transactions Analysis* for TEP GP, specifically: (i) net debt outstanding as of December 31, 2017; and (ii) the implied value of a 25.01% interest in REX Holdings.

**Material Omissions Concerning Evercore's Potential Conflict of Interest**

45.     The Registration Statement also fails to disclose or misstate material information relating that materially misleads unitholders as to the potential conflicts of interest faced by the Board and Evercore.

46.     In particular, the Registration Statement disclose information concerning the past dealings between Evercore, TEP, and TEP GP.  Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates is required pursuant to 17 C.F.R. § 229.1015(b)(4).  Such information is also material to TEP unitholders.  Indeed, it is imperative for unitholders to be able to understand what factors might influence the financial advisor's analytical efforts.  A financial advisor's own proprietary financial interest in a proposed merger must be carefully considered in assessing how much credence to give its analysis.  A reasonable unitholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the merger to the unitholders, might have.  Especially when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to him, given his overall economic interest, than only approving a deal at truly fair price to unitholders.  The complete omission of any of Evercore's previous compensation received in connection with the work is has performed for TEP and TEP GP renders the Registration Statement materially incomplete and misleading.

47.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed

decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

48.     Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

49.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

50.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

51.     The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

52.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common unitholders' support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) financial projections for TEP;

(ii) the valuation analyses conducted by the Company's financial advisor, Evercore; (iii) the background process leading up to the Proposed Transaction; and (iv) the potential conflicts of interest Evercore faced as a result of its historical dealings with either party.

53.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to common unitholders although they could have done so without extraordinary effort.

54.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Evercore reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Evercore, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration

Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Evercore's analyses in connection with their receipt of the fairness opinions, question Evercore as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

55.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

56.    TEP is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

57.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

58.     Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of TEP within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of TEP, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

62. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

65. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the common unitholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 12, 2018

**COOCH AND TAYLOR, P.A.**

*/s/ Blake A. Bennett*

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles D. Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com
mschreiner@monteverdelaw.com

Blake A. Bennett (#5133)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
Tel.: (302) 984-3800

*Attorneys for Plaintiff*

*Attorneys for Plaintiff*